# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TEODORA SHAW,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WHIRLPOOL CORPORATION, et al.,<br><br>　　　　Defendants. | No. C19-5-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS CERTAIN CLAIMS** |

## I.　　INTRODUCTION

This case is before me on a motion (Doc. No. 8) by defendants Whirlpool Corporation (Whirlpool) and Gallagher Bassett Services, Inc. (Gallagher Bassett), to dismiss Count II (Intentional Infliction of Emotional Distress) of plaintiff's petition (Doc. No. 6) as well as plaintiff's claim for severe emotional distress damages alleged under Count I (Breach of Contract).  Defendant ExamWorks Clinical Solutions, LLC (ExamWorks) joins in the motion. *See* Doc. No. 9.  Plaintiff Teodora Shaw (Shaw) has filed a resistance (Doc. Nos. 15, 16).[1]  ExamWorks has filed a reply (Doc. No. 18), as have Whirlpool and Gallagher Bassett (Doc. No. 21).  I find that oral argument is not necessary.  *See* Local Rule 7(c).

## II.　　FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Shaw filed her petition (Doc. No. 6) in the Iowa District Court for Linn County on December 3, 2018.  On January 11, 2019, ExamWorks removed the case to this court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.  *See* Doc. No. 1.  Gallagher Bassett and Whirlpool consented to the removal.  *See* Doc. No. 4.

---

[1] The briefs at Doc. Nos. 15-1 and 16-1 are identical.

Generally speaking, Shaw alleges:

> breach of contract and/or tortuously wrongful conduct in the failure to carefully, reasonably, promptly and transparently, and in good faith, complete settlement, obtain Medicare approval and agreement as to conditional Medicare payments and lien, obtain Medicare approval and agreement as to a Medicare Set-Aside Agreement and to promptly provide payments as required under the settlement agreement of [Shaw]'s worker compensation claims.

Doc. No. 6 at 1. She describes the relationship between the parties as follows:

> At times relevant to the processing of the underlying case as alleged herein, Ms. Shaw, as an injured worker from Whirlpool and with a proposed worker compensation claim and/or settlement with Whirlpool, which involved a Medicare Set Aside ("MSA") proposal and Medicare conditional payment proposals ("MSP")[2] as stated hereinafter, was a third-party beneficiary of a contract between Whirlpool and/or Gallagher Bassett, and with ExamWorks for the provision of services to submit and obtain approval of Center for Medicare and Medicaid Services [CMS] as to a Medicare Set Aside Arrangement and Medicare conditional payment terms to complete the proposed worker compensation settlement agreement alleged hereinafter.

*Id.* at 4.

Shaw alleges that she worked for Whirlpool when she suffered injuries on October 8, 2009, and March 21, 2011. *Id.* at 4-5. As a result of her work-related injuries, Shaw filed for workers' compensation benefits. *Id.* at 5. Gallagher Bassett worked as

---

[2] MSP stands for "Medicare Secondary Payer," a term used when Medicare does not have primary payment responsibility on behalf of its beneficiaries. *See* Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide (Jan. 4, 2019), *available at* https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Workers-Compensation-Medicare-Set-Aside-Arrangements/Downloads/WCMSA-Reference-Guide-Version-2_9.pdf. When a workers' compensation claim is disputed, Medicare may make "conditional payments" for which it is later reimbursed when the beneficiary receives a workers' compensation settlement. *Id.* A Medicare Set-Aside Arrangement (MSA) is used to estimate the total cost that will be incurred for all medical expenses otherwise reimbursable by Medicare for work-injury-related conditions during the course of the claimant's life and to set aside sufficient funds from the settlement to cover that cost. *Id.*

Whirlpool's third-party administrator concerning workers' compensation claims. Whirlpool and Gallagher Bassett disputed Shaw's claim for workers' compensation benefits. While her claim was pending, Whirlpool terminated Shaw's employment.

On July 7, 2016, Shaw and Whirlpool (through Gallagher Bassett) entered into a contingent compromise settlement agreement (Settlement Agreement) of the workers' compensation claim pursuant to Iowa Code § 85.35(3). *Id*. at 5-6. According to the petition, the Settlement Agreement provided that:

> a. Whirlpool, upon approval of the Iowa Worker Compensation Commissioner of the Settlement Agreement, was to pay Shaw the sum of $172,400.
>
> b. Whirlpool would satisfy future payments and/or past conditional payments made by Medicare per the terms and conditions of the "contingency" as set forth on the Contingent Settlement Cover Sheet attached to the settlement documents.

*Id*. at 6. That contingency provided:

> These parties agree the accompanying settlement and its approval are conditioned upon the occurrence of the following event: The collective amount of any MSA/CMS for Claimant's future medical expenses and any and all conditional payments, payments of liens made by or asserted by CMS, Medicare or Medicaid being at the amount at or below $30,000.

*Id*.

As part of the Settlement Agreement, Shaw agreed to a release in which she waived any and all claims against Whirlpool and Gallagher Bassett and their agents, including all past claims for bad faith in the processing of the worker compensation claims and claims arising from her employment and termination with Whirlpool. *Id*. at 7. The release did not include a release of actions related to performance of the Settlement Agreement. *Id*. The Iowa Worker Compensation Commissioner approved the Settlement Agreement on September 16, 2016.

Pursuant to the Settlement Agreement, Whirlpool and Gallagher Bassett were to submit the MSA and MSP conditional payment requests to CMS and obtain prompt

3

approval of the MSA and MSP conditional payment liens. *Id.* Shaw alleges that ExamWorks did not submit a report to CMS for MSA approval until January 23, 2017, despite several requests by Shaw to Whirlpool, ExamWorks and Gallagher Bassett for an update on completion of the contingencies and after Shaw and her attorney had to hire Medivest Allocation Services, Inc. (Medivest), to assist in obtaining the necessary CMS MSA approval. *Id.* at 8. Medivest prepared and submitted a package for approval from CMS of an MSA Agreement. *Id.* CMS approved an MSA in the amount of $19,135 on February 15, 2017. *Id.* That same day, Shaw (through her attorney) requested documentation between the adjuster and vendor(s) used by Whirlpool, Gallagher Bassett or ExamWorks for purposes of transparency. *Id.* at 9. No documentation was provided.

Medivest submitted a request for reconsideration to CMS by March 22, 2017, and CMS confirmed its previous decision to determine the MSA to be $19,135. *Id.* This completed the process for approval of the MSA for settlement. *Id.* On March 24, 2017, Shaw attempted to complete the settlement and payment of the monies under the settlement. *Id.* Whirlpool and Gallagher Bassett refused on the grounds that the agreement of the amount and extent of the MSP conditional payments had not yet been obtained by Whirlpool, Gallagher Bassett or ExamWorks. Shaw requested that Whirlpool and Gallagher Bassett authorize Medivest to directly work with CMS for approval of the MSP conditional payment resolution. This request was rejected. *Id.*

On April 10, 2017, Shaw's attorney contacted CMS and discovered that the claims for the March 21, 2011, and October 8, 2009, injuries were incorrectly reported and further work on the MSP conditional payments could not be completed until the claims were amended or corrected. *Id.* at 9-10. Shaw relayed this information to Whirlpool and Gallagher Bassett. *Id.* at 10. On April 24, 2017, Whirlpool, Gallagher Bassett and ExamWorks obtained an MSP conditional benefits letter stating there were no conditional payments as to the October 8, 2009, injury date. Shaw and her attorney requested that Whirlpool make corrections to complete the process so the proper MSP conditional payment agreements and resolutions could be concluded. *Id.*

By June 16, 2017, Whirlpool, upon requests from Shaw's attorney, authorized Medivest to act as its representative to access information and act to obtain appropriate MSP conditional payment letters. Medivest worked with Shaw and her attorney and was able to obtain a final MSP conditional letter payment amount. On July 28, 2017, CMS issued an MSP conditional payment letter showing no monies were due and owing for the March 21, 2011, injury. Shaw alleges that Whirlpool and Gallagher Bassett acknowledged this letter on August 4, 2017, but did not immediately provide the final settlement payment. In carrying out the actions for approval of the MSA and calculation and payment of any MSP conditional payments made and/or due to CMS, Shaw alleges that Whirlpool and Gallagher Bassett:

a. Failed to timely and properly complete the paperwork for the calculation of and determination and payment of any MSP conditional payments for past medical expenses paid by Medicare through CMS.

b. Failed to timely and properly complete the paperwork for such approval of an MSA/CMS approval.

c. Failed and refused to comply with transparency and reasonably advise Shaw of the submissions made by and submitted to CMS by Whirlpool, Gallagher Bassett and ExamWorks for the MSA approvals and MSP conditional payment amounts.

*Id.* at 12.

Shaw obtained a judgment dated August 18, 2017, from the Iowa District Court under Iowa Code § 85.42 for a judgment on the order of the Iowa Worker Compensation Commissioner and payment of the monies due and owing thereunder. *Id.* at 13. Despite this judgment, she alleges that Whirlpool and Gallagher Bassett continued to fail and refuse to complete the settlement, including the payment of the remaining lump sum due and owing from the settlement amount of $172,400. Shaw received the payment due under the Settlement Agreement in September 2017.

Shaw alleges two counts against all defendants as a result of the above-described actions:

- Count I – Breach of Contract for Failure to Act to Obtain CMS Approvals

- Count II – Intentional and Tortious Infliction of Emotional Distress for Failure to Act to Comply with Agreement to Provide for Conditional Payment Resolution and MSA for Medical Care

*Id.* at 13-16. As part of Count I, Shaw alleges the following:

75. The settlement agreement in this case to provide approval of CMS for MSP conditional payment resolution and MSA provision of medical care to Ms. Shaw in the context of the settlement of this worker compensation dispute was a contract wherein negligence or failure to perform the contract and provision of MSP conditional payment resolution and MSA approval and medical care by Whirlpool, and its agents Gallagher Bassett and ExamWorks, was likely to cause Ms. Shaw severe emotional distress.

76. The failure of Whirlpool, and its agents Gallagher Bassett and ExamWorks, to act to provide carefully, reasonably, promptly and transparently for CMS conditional MSP payment resolution and approval of MSA for medical care for Ms. Shaw did result in severe emotional distress to Ms. Shaw.

77. The settlement agreement in this case to provide the CMS conditional MSP payment resolution and approval for MSA for medical care to Ms. Shaw in the context of the settlement of this worker compensation dispute was a contract of a personal nature between Shaw and Whirlpool, and its third-party administrator agents, Gallagher Bassett and ExamWorks, as the CMS agent.

78. The settlement agreement in this case to provide CMS conditional MSP payment resolution and approval for MSA for medical care to Ms. Shaw in the context of the settlement of this worker compensation dispute involved a contractual duty or obligation of Whirlpool, and its third party administrator agents, Gallagher Bassett and ExamWorks, that was coupled with matters of mental concern or solicitude of Ms. Shaw or with the sensibilities of Ms. Shaw and it was known by th[e] parties at the time of contracting that a breach of this duty to provide

this CMS conditional MSP payment resolution and approval of the MSA for medical care carefully, promptly, reasonably and transparently and thereby breach the contract would necessary and/or reasonably result in mental anguish or suffering to Ms. Shaw.

    79.    The Defendant Whirlpool has tortuously and/or otherwise breached the contract as aforesaid.

    80.    The Defendant Gallagher Bassett has tortuously and/or otherwise breached the settlement contract and its third party contract as aforesaid and/or has negligently and/or intentionally interfered with the good faith performance of the settlement contract by Whirlpool.

    81.    The Defendant ExamWorks has tortuously and/or otherwise breached the settlement contract and its third party contract as aforesaid and/or has negligently and/or intentional interfered with the good faith performance of the settlement contract by Whirlpool.

*Id.* at 14-16. As for Count II, Shaw re-pleads and re-alleges paragraphs 1 to 81 and then alleges the following:

    83.    The actions of Whirlpool, Gallagher Bassett and ExamWorks as set forth above, were:
    a.    Outrageous conduct;
    b.    Done with the intention of causing or the reckless disregard of the probability of causing emotional distress.

    84.    Ms. Shaw suffered severe or extreme emotional distress as a result to the outrageous conduct of Whirlpool, Gallagher Bassett and ExamWorks as alleged herein.

*Id.* at 16.

Defendants move to dismiss Count II in its entirety, along with Shaw's claim for severe emotional distress damages under Count I, arguing that such damages are not available for a breach of contract claim. *See* Doc. No. 8-1.

## III. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)). While *factual*

"plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am., Inc.*, 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV. ANALYSIS

Defendants argue that plaintiff's claim for intentional and tortious infliction of emotional distress must be dismissed because defendants' alleged behavior is insufficiently outrageous as a matter of law and that emotional distress damages are not available for a breach of contract claim. *See* Doc. No. 9-1 at 4, 9. I will address each argument in turn.

## A. Count II – Intentional and Tortious Infliction of Emotional Distress

Defendants argue that Shaw's claim of intentional and tortious infliction of emotional distress fails as a matter of law because the alleged conduct is not sufficiently outrageous. Shaw argues that it is and contends that she has a special relationship with defendants such that any wrongful conduct by them may be elevated to outrageous. Doc. No. 15-1 at 7.

A plaintiff must prove the following elements to prevail on a claim of intentional infliction of emotional distress under Iowa law:[3]

> (1) outrageous conduct by the defendant;
>
> (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress;
>
> (3) plaintiff suffered severe or extreme emotional distress; and
>
> (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress.

*Barreca v. Nickolas*, 683 N.W.2d 111, 123 (Iowa 2004) (quoting *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 423 (Iowa 1997)). Outrageous conduct is conduct that is "so extreme in degree as to go beyond all possible bounds of decency" and is "regarded atrocious, and utterly intolerable in a civilized community." *Id.* "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!" *Smith v. Iowa State University of Sci. and Tech.*, 851 N.W.2d 1, 26 (Iowa 2014) (quoting *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156-57 (Iowa 1996)). "[I]t is for the court to determine in the first instance, as a matter of law, whether the conduct

---

[3] Both sides assume, and I agree, that Iowa law applies to Shaw's claims in this diversity action. *See, e.g.,* Doc. No. 8-1 at 7; Doc. No. 15-1 at 6.

complained of may reasonably be regarded as outrageous." *Smith*, 851 N.W.2d at 26 (quoting *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 118-19 (Iowa 1984)).

"When evaluating claims of outrageous conduct arising out of employer-employee relationships, we have required a reasonable level of tolerance. Every unkind and inconsiderate act cannot be compensable." *Smith*, 851 N.W.2d at 26 (quoting *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990)). In making the determination of whether conduct is outrageous "the court should consider the relationship between the parties" such as whether the conduct arises "from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Vinson*, 360 N.W.2d at 118 (quoting Restatement (Second) of Torts § 46, comment e (1965)). "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.*

First, I will address Shaw's argument concerning the relationship between the parties. Shaw alleges that Whirlpool is her former employer, Gallagher Bassett administers worker compensation claims for Whirlpool and ExamWorks provides Medicare compliance services for Gallagher Bassett. Shaw alleges that (1) employees are entitled to greater protection than a mere stranger and (2) within the context of a workers' compensation claim, a claim for intentional infliction of emotional distress is considered equivalent to an insurance bad faith action, except that it requires proof of severe emotional distress. Doc. No. 15-1 at 7.

In support of her first argument, Shaw cites *Blong v. Snyder*, 361 N.W.2d 312, 313 (Iowa Ct. App. 1984). In *Blong*, the plaintiff was accused of falsifying a time card and was fired. *Blong*, 361 N.W.2d at 313. Blong denied the accusation and filed union grievance proceedings, an age discrimination complaint and a complaint with the National Labor Relations Board. *Id.* Blong and his employer reached a negotiated settlement

providing for Blong's reinstatement. He alleged he was "harassed unmercifully by supervisory personnel" upon his return. *Id*. He resigned less than four months after his reinstatement upon his doctor's orders. *Id*. He then sued his employer for intentional infliction of emotional distress. *Id*. The district court found the defendants' conduct was not sufficiently outrageous. *Id*. at 315. On appeal, the court considered "whether the relationship between the defendant and the victim of the alleged tort is one that imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in an arm's length encounter between strangers." *Id*. at 316. It found that "plaintiff's status as an employee entitled him to more protection from insultive or abusive treatment than would be expected in interactions between two strangers." *Id*. It concluded that reasonable minds could differ on the issue of outrageousness generating a jury question. *Id*. at 317.

Shaw contends that the special relationship here is between a self-insured employer (and its agents) and an injured worker. *Id*. at 8. She alleges that defendants knew she had a preexisting mental and emotional injury as well as a physical injury and no job, given that she had been recently terminated. *Id*. She contends that defendants failed and refused to take the necessary steps to complete the settlement agreement in a timely manner, even when Shaw informed them the settlement could not be completed until certain information was corrected with CMS. She goes on to state that she gave up worker compensation and bad faith rights for a right to obtain treatment through an MSA, along with other contract payments, and that defendants' failure to properly act to complete the settlement constitutes "outrageous" conduct in this context. *Id*.

I disagree. While the employee/employer relationship is a factor to consider in determining outrageousness, *see Smith*, 851 N.W.2d at 29, the dispute here is removed from that relationship because the Settlement Agreement was negotiated through counsel after the parties' relationship had terminated. When Whirlpool did not perform to Shaw's satisfaction in completing the Settlement Agreement, it was no longer her employer and did not hold any position of power over her. Whirlpool's obligations to Shaw were purely

contractual.[4]  I do not find Shaw's and Whirlpool's past employment relationship to be of much, if any, relevance to the outrageousness analysis.

As for Shaw's second argument – comparing an intentional infliction of emotional distress claim to a first party bad faith claim – she cites the following paragraph from *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988):

> As implied by our discussion regarding punitive damages in *Pirkl,* 348 N.W.2d at 636, we are convinced traditional damages for breach of contract will not always adequately compensate an insured for an insurer's bad faith conduct. Our focus, of course, is on the recompense available to the affected insured, not the extent to which the insurer may be subject to additional statutory penalties for its misconduct. The pertinent provisions of Iowa Code chapter 507B will, in all likelihood, deter nearly all bad faith conduct on the part of insurers, but when on those occasions they do not, the penalties would provide slight consolation to an aggrieved insured. Further, we do not believe the availability to the insured of extra-contractual damages should be dependent upon the insured sustaining severe emotional distress occasioned by the insurer's conduct. It follows that an action for intentional infliction of emotional distress, pursuant to *Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252, 254 (Iowa 1972), does not provide an adequate remedy due to its limited applicability. We conclude it is appropriate to recognize the first-party bad faith tort to provide the insured an adequate remedy for an insurer's wrongful conduct.

*Dolan*, 431 N.W.2d at 794.  Shaw argues:

> In other words, in the case of a special relationship such as worker compensation insurer/injured worker, the nature of the relationship and the recognition of a duty of good faith, elevates wrongful conduct to the level of "outrageous", except within the confines of a claim of intentional infliction of emotional distress, the plaintiff must sustain severe emotional distress.

Doc. No. 15-1 at 7-8.

Defendants argue that policy concerns in tort claims based on the relationship between an injured employee and the employer's workers' compensation insurance

---

[4] Based on the allegations in the petition, Whirlpool is the only defendant that ever had any type of relationship to Shaw.

carrier are limited to the context of an insurance contract. *See* Doc. No. 21 at 3-4. As such, they argue that Iowa does not recognize bad faith tort claims – even those against an insurer – based on contracts other than contracts of insurance. *Id.* at 4. They contend the policy concerns that are present in those cases do not apply to this context where an injured worker negotiated a settlement of the worker's statutory claim to benefits. *Id.* (citing *White v. Northwestern Bell Telephone Co.*, 514 N.W.2d 70, 76 (Iowa 1994)).

In *White*, an injured employee and self-insured employer entered into a compromise case settlement that settled all benefits except future medical care, which the employer agreed to continue to pay. *White*, 514 N.W.2d at 72. The employer later disputed the reasonableness and necessity of certain medical treatments and the injured employee sued for breach of the compromise settlement and sought compensatory and punitive damages. *Id.* The employee did not allege a bad faith claim and the court reasoned that because the employee's right to medical care arose out of the settlement agreement rather than the insurance contract, no bad faith claim existed. *Id.* at 77. Essentially, the concerns of unequal bargaining power between an injured employee and the workers' compensation insurance carrier did not exist when the parties negotiated a settlement agreement through counsel. *Id.* Therefore, the employer's failure to pay could constitute a breach of contract, but not an intentional tort claim premised on insurer bad faith. *Id. See also Spencer v. Annett Holdings, Inc.*, 905 F. Supp. 2d 953 (S.D. Iowa 2012) ("As *White* recognized, when two parties have entered into an agreement through counsel, the concerns surrounding insurance contracts are not in play; thus, bad faith is not cognizable . . . a bad faith claim for breach of a contractual settlement agreement between two represented parties is not cognizable under Iowa law.").

Shaw's argument is a stretch. I disagree that under *Dolan* first party bad faith claims and claims of intentional infliction of emotional distress can be considered "equivalent." *Dolan* recognized that a claim of intentional infliction of emotional distress was inadequate to provide the insured a remedy of extra-contractual damages for an insurer's wrongful conduct. *See Dolan*, 431 N.W.2d at 794 ("It follows that an action

for intentional infliction of emotional distress . . . does not provide an adequate remedy *due to its limited applicability*.") (emphasis added). Shaw has not alleged a claim of bad faith but has alleged claims of breach of contract and intentional infliction of emotional distress arising out of performance under a Settlement Agreement negotiated through counsel. As noted in *White*, the policy concerns of unequal bargaining power are not present here as they are in an insurance contract. Shaw's theory regarding a "special relationship" between the parties fails as well.

Turning to the alleged conduct, Shaw contends that defendants failed to timely complete the actions necessary to effectuate the Settlement Agreement. She alleges she had to undertake certain actions on her own and that, even when she informed defendants of steps that needed to be taken, they still did not act in a prompt manner to complete the settlement. Shaw alleges she eventually had to obtain a judgment for payment of the monies due and owing to her. As a result of defendants' alleged conduct, payment to Shaw under the Settlement Agreement was significantly delayed.

As noted above, there is nothing about the situation or the relationship between the parties that would obligate defendants to perform in a particular way other than what was agreed to in the Settlement Agreement. Breach of contract typically does not "approach the requisite standard of outrageousness which is necessary to create liability" for a claim of intentional infliction of emotional distress. *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (concluding that breach of contract by bank to lend money to borrower did not constitute "outrageous conduct"); *see also Madren v. Super Valu, Inc.*, 183 F. Supp. 2d 1138, 1144 (S.D. Iowa 2002) (finding that termination of benefits that allegedly breached collective bargaining agreement was not sufficiently outrageous). Neither do delays in payments or authorizations. *See Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252, 255 (Iowa 1972) (insurance company's failure to immediately pay fire loss claim was not sufficiently outrageous); *Burlew v. American Mut. Ins. Co.*, 472 N.E.2d 682, 685 (N.Y. 1984) (employer's delay in authorizing surgery related to a work-related injury was not sufficiently outrageous). However, that

is not to say that a failure to timely pay benefits to a claimant cannot ever rise to the requisite level of outrageousness. *See Travelers Indem. Co. of Illinois v. Griner*, 809 So.2d 808, 812 (Ala. 2001) (affirming trial court's finding that evidence of outrageousness was sufficient to go to a jury where employer, workers' compensation insurance carrier and claims administrator withheld payment for prescriptions of hospital bed, whirlpool tub and psychiatric treatment for approximately five years in an attempt to get claimant to agree to minimal settlement even though such items and services were covered under the policy).

Here, I find that any alleged failure by defendants to timely carry out the Settlement Agreement according to its terms does not rise to a sufficient level of outrageousness necessary to sustain a claim of intentional infliction of emotional distress. While the Settlement Agreement is not in the record, Shaw indicates that it was approved by the Iowa Worker Compensation Commissioner on September 16, 2016, and was conditioned upon approval from CMS of an MSA and MSP conditional payment liens. *See* Doc. No. 6 at 7. There is no indication in the petition that the Settlement Agreement included a timeline for completion of these conditions. Shaw received the final payment from the settlement approximately a year later. *Id.* at 13. While the allegations, taken as true, may suggest dilatory conduct by defendants, they do not come close to stating a plausible claim for outrageous conduct within the meaning of Iowa law. This is a breach of contract case – no more and no less. Defendants' motion to dismiss Count II will be granted.

### B. *Emotional Distress Damages*

Because the only remaining claim is Shaw's breach of contract claim, I must determine whether she may pursue emotional distress damages as part of that claim. Under Iowa law, she may not.

Emotional distress damages are recoverable only in breach of contract cases dealing with services or acts that involve deep emotional responses in the event of a

breach.  *See Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 171 (Iowa 2002); *Meyer v. Nottger*, 241 N.W.2d 911, 921 (Iowa 1976) (recognizing emotional distress damages may be recoverable arising out of a breach of contract to perform funeral services); *Cowan v. W. Union Tel. Co.*, 98 N.W. 281, 282-84 (Iowa 1904) (recognizing emotional distress damages are recoverable for negligent delivery of a telegram announcing death of a close relative). *Compare with Lyons v. Midwest Glazing, L.L.C.*, 235 F. Supp. 2d 1030, 1049 (N.D. Iowa 2002) (concluding emotional distress damages were not recoverable for breach of an employment contract, noting that "employment contracts principally serve an economic purpose"); *Bossuyt v. Osage Farmers Nat. Bank*, 360 N.W.2d 769, 778 (Iowa 1985) (concluding emotional distress damages were not recoverable as a result of the bank's refusal to honor its cashier's check); *Harsha*, 346 N.W.2d at 801 (discussing defendant's allegedly deliberate breach of contract and holding jury should not have been permitted to consider emotional distress damages).

The Iowa Supreme Court has provided a thorough background of emotional distress damages recognized under Iowa law, starting with the following summary:

> Therefore, we can draw an important lesson for modern contractual relationships from *Hadley*. The lesson, which is implicit in the *Lawrence* rule, teaches that when parties to a transaction should reasonably have contemplated that emotional distress will naturally flow from a breach of the contract, the foreseeable consequential damages the plaintiff could recover should include damages for emotional distress.

*Miranda v. Said*, 836 N.W.2d 8, 18 (Iowa 2013). The Court went on to explain that the inquiry "is not simply whether the parties contemplated emotional distress as a result of a breach during the negotiation and formation of the contract, but whether the subject matter underlying the contractual arrangement was one in which emotional distress was a 'particularly likely result.'" *Id.* (quoting Restatement (Second) of Contracts § 353 cmt. *a* at 149 (1981)). In a footnote, the Court stated:

> This is not to say that breach or threatened breach of an insurance contract or other commercial contract will not constitute intentional infliction of emotional distress. *See Amsden v. Grinnell Mut. Reins. Co.*,

17

> 203 N.W.2d 252, 254–55 (Iowa 1972). In *Amsden,* we observed that an insurance company that maliciously threatens to withhold payments violates the duty of good faith and fair dealing, and "'violation of that duty sounds in tort notwithstanding that it may also constitute a breach of contract.'" *Id.* at 254 (quoting *Fletcher v. W. Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 93 (1970)). Although we did not consider the conduct of the insurance company in *Amsden* extreme or outrageous, we suggested breach of a contractual duty might otherwise be a sufficient basis for awarding damages for emotional distress. *See id.* at 255.

*Miranda*, 836 N.W.2d at 19, n.8. Therefore, *Miranda* made clear that emotional distress damages are not prohibited per se in a breach of contract action, but that emotional distress must be a foreseeable consequence of a breach of the contract.

Here, the Settlement Agreement did not involve a service or act that one would expect a deep emotional response in the event of a breach. While Shaw alleges that defendants knew she had a preexisting mental and emotional injury and no job because she had been terminated, *see* Doc. No. 15-1 at 8, the subject matter of the contract is not one in which severe emotional distress would be anticipated in the event of a breach. This situation is also unlike the *Fletcher* case, discussed in *Amsden*, in which an insurer fabricated a dispute with the aim of coercing the insured into settling for a lesser amount than he was clearly owed. *Amsden*, 203 N.W. at 254-55. Here, the maximum amount Shaw was entitled to had already been resolved. Any delay by defendants could not serve a coercive purpose, only delay the final payment to Shaw.

Because the contract involved the payment of money for settlement of a workers' compensation claim, I find that emotional distress damages as a result of any breach are inappropriate. *See Clark-Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 514 N.W.2d 912, 916 (Iowa 1994) (holding emotional distress damages were not available in the context of denial of insurance payments); *Smith v. Sanborn State Bank*, 126 N.W.779, 781 (1910) ("[N]o case has been called to our attention, nor do we think one can be found, which holds that damages are recoverable for mental anguish growing out of the violation of a contract for the payment of money."). As such, Shaw is not entitled to seek emotional

18

distress damages for breach of contract. Defendants' motion to dismiss this request for relief will be granted.

## V. CONCLUSION

For the reasons stated herein, defendants' motion (Doc. No. 8) to dismiss Count II (Intentional Infliction of Emotional Distress) and the claim for emotional distress damages under Count I (Doc. No. 6) is **granted**. This case shall proceed with regard to Count I (Breach of Contract) only.

**IT IS SO ORDERED.**

**DATED** this 18th day of April, 2019.

_____
Leonard T. Strand, Chief Judge